Mr. Harry K. Singletary, Jr. Secretary, Florida Department of Corrections 2601 Blair Stone Road Tallahassee, Florida 32399-2500
Dear Secretary Singletary:
You ask substantially the following question:
May the Department of Corrections, in the exercise of its statutory grant of discretion, adopt a rule that denies an award of work, extra, and incentive gain-time to certain classes of inmates when such rule will be applied prospectively and will not affect such gaintime already awarded?
In sum:
The Department of Corrections, in the exercise of its statutory grant of discretion, may adopt a rule that denies an award of work, extra, and incentive gaintime to such classes of inmates it deems appropriate when such rule will be applied prospectively and will not affect such discretionary gain-time already awarded.
The Department of Corrections (DOC) is considering adoption of a rule denying the award of work, extra, and incentive gain-time to certain categories of violent offenders when such award would result in the release of these inmates prior to the completion of 85 percent of their sentences. The rule would be applied prospectively and would not affect any such gain-time already awarded. While this opinion discusses DOC's authority to adopt a rule setting forth the criteria to be used in granting incentive gain-time, the opinion does not comment upon the classifications selected by DOC or otherwise limit its discretion in determining the criteria to be used in granting incentive gain-time.
You state that work and extra gain-time are awarded to inmates convicted of offenses committed between July 1, 1978, and June 14, 1983. During that period, section 944.275, Florida Statutes, authorized the award of work and extra gain-time as follows:
(2)(b) The department is authorized to grant additional gain-time allowances on a monthly basis, as earned, up to 1 day for each day of productive or institutional labor performed by any prisoner who has committed no infraction of the rules of the department or of the laws of this state and who has accomplished, in a satisfactory and acceptable manner, the work, duties, and tasks assigned. Such gain-time allowances under this section shall be awarded on the basis of diligence of the inmate, the quality and quantity of work performed, and the skill required for performance of the work.
* * *
(3)(a) An inmate who faithfully performs the assignments given to him in a conscientious manner over and above that which may normally be expected of him, against whom no disciplinary report has been filed within the preceding 6 months, and whose conduct, personal adjustment, and individual effort towards his own rehabilitation show his desire to be a better than average inmate or who diligently participates in an approved course of academic or vocational study may be granted, on an individual basis, from 1 to 6 days per month extra gain-time to be deducted from the term of his sentence.
Thus, in addition to basic gain-time allowances, the Department of Corrections was granted the discretion under the 1979 statute to award extra or incentive gain-time for each month the inmate works diligently, participates in training, uses time constructively, or otherwise engages in positive activities.[1]
In 1983 the Legislature substantially revised and simplified the gain-time statute. As amended, section 944.275(4)(b), Florida Statutes (1983), provided for a maximum of twenty days of incentive gain-time per month for inmates engaged in "positive activities" such as training programs or diligent work. Although the 1983 amendment limited DOC's discretion by decreasing the largest possible incentive gain-time award from 37 to 20 days a month, DOC still retained substantial discretion in deciding whether to award such incentive gain-time.[2]
The awarding of incentive gain-time in section 944.275, Florida Statutes, was amended in 1993[3] and again in 1995.[4] Among the amendments to the statute was a provision making inmates who were sentenced for offenses committed on or after October 1, 1995, ineligible to earn any type of gain-time in an amount that would cause the sentence to expire or terminate prior to the inmate having served a minimum of 85 percent of the sentence imposed.[5]
While the 1993 and 1995 amendments altered the amount of gain-time DOC was authorized to award, its discretion whether to award such gain-time was not altered.
Thus, since 1979 section 944.275, Florida Statutes, has recognized the discretion of DOC in awarding incentive gaintime, even though the statute in effect at the time the offense was committed would control the maximum amount of gain-time the department could award. In recognition thereof, the Supreme Court of Florida in Waldrup v. Dugger[6] stated:
Nothing in this opinion, however, shall be read as restricting the discretion accorded DOC under the earlier incentive gain-time statutes. This discretion remains intact. If DOC withholds all or some of the incentive gain-time available to Waldrup or similarly situated inmates under the earlier statutes, then DOC's actions cannot be challenged unless they constitute an abuse of discretion.
In Waldrup the Court recognized that the statutory language amending the gain-time statute in 1983 "discloses that the total number of days granted by DOC was discretionary, provided the award never exceeded twenty."[7] Thus, while the 1983 reforms limited DOC's discretion by decreasing the largest possible incentive gain-time award from 37 to 20 days a month, DOC still retained substantial discretion in deciding whether to award such incentive gain-time.
It is well established that a penal statute violates the ex post facto clause if, after a crime has been committed, it increases the penalty attached to that crime.[8] The Court in Waldrup held that the prospective application of an amendment to the gain-time statute that decreased the possible award of incentive gain-time, even though such gain-time had not yet been awarded, rendered the statute unconstitutional as an ex post facto law when applied to an inmate whose offenses occurred prior to the effective date of the amendment. Accordingly, DOC was required to continue to award work or extra gain-time under section 944.275, Florida Statutes (1979), to an inmate convicted of crimes committed in 1980 and 1982 rather than awarding gain-time under the 1983 amendment that reduced the amount of incentive time that could be awarded. While the 1993 and 1995 amendments altered the amount of gain-time DOC was authorized to award, DOC's discretion in awarding such gain-time was not altered.
The courts, however, have held that the prohibition against ex post facto laws does not prohibit changes in stated policy rules that show how an agency's discretion is likely to be exercised.[9]
the adoption of the rule by DOC does not limit the agency's discretion but rather reflects only the agency's procedure in deciding whether to grant incentive gain-time. From the time an inmate is incarcerated, he is on notice that the award of gain-time is subject to the discretion of DOC. The proposed rule merely states and justifies that exercise of discretion by DOC. The determination as to which class of inmates may be subject to the DOC rule would also appear to be within the department's discretion.
While the various enactments of section 944.275, Florida Statutes, reflect some of the criteria that may be considered in granting such gain-time, DOC's discretion is not limited to such criteria. The courts of this state have recognized that the decision to award or deny incentive gain-time rests within the discretion of DOC. The exercise of such discretion, however, must be uniform unless some justification and authority (such as a duly adopted rule) exists for classifying and treating certain inmates differently than others. For example, the First District Court of Appeal of Florida in Pettway v. Wainwright,[10] stated:
While it is true that the statute [section 944.275(4)(b), Florida Statutes (1983)] is not mandatory and the DOC may deny incentive gain-time, the DOC must uniformly grant or deny incentive gaintime unless there is some justification and authority for classifying and treating some prisoners different [sic] from other prisoners. The DOC argues that it needs a cut-off date for granting incentive gaintime in order to determine a definite release date sufficiently in advance of a prisoner's release and in order to properly prepare for the prisoner's release. While this might be a justifiable basis for adopting a rule authorizing such a procedure, no such rule has been adopted. Until the DOC adopts a rule in accordance with the Administrative Procedures Act and affected parties have had an opportunity to contest the validity of such a rule, the DOC is without authority to arbitrarily deny incentive gain-time to prisoners during their last month or more of incarceration.
Subsequently, DOC adopted an emergency rule providing a cut-off date for granting inmates incentive gain-time, which rule was upheld by the First District Court of Appeal in DeAngelis v. Wainwright.[11]
More recently, the United States Eleventh Circuit Court of Appeals in Conlogue v. Shinbaum[12] determined that the modification of an administrative rule for determining a prisoner's eligibility to receive incentive good time such that the prisoner was denied incentive good time did not violate either the equal protection clause or the ex post facto clause. The court held that denying such gain-time to prisoners based on their criminal records was rationally related to the state's interest in preventing the early release of serious offenders; thus, no violation of the equal protection clause was found.
Accordingly, I am of the opinion that the Department of Corrections, in the exercise of its statutory grant of discretion, may adopt a rule that denies an award of work, extra, and incentive gain-time to such classes of inmates it deems appropriate when such rule will be applied prospectively and will not affect such gain-time already awarded.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjwls
[1] Section 944.275, Florida Statutes (1979), was not amended during the 1980, 1981, or 1982 legislative sessions. While the statute refers to "additional" and "extra" gain-time, you have advised this office that the Department of Corrections designated by rule the gain-time provided under s. 944.275(2)(b) as "work" gain-time and the gain-time provided under s. 944.275(3)(a) as "extra" gain-time. See, Fla. Admin. Code R. 33-11.065 and 33-11.085 (1980), effective February 26, 1980. For convenience, some courts have referred to the above gain-time as incentive gain-time. See, Raske v. Martinez, 876 F.2d 1496 (11th Cir. 1989). For purposes of this opinion, such gain-time is referred to as incentive gain-time.
[2] See, Waldrup v. Dugger, 562 So.2d 687 (Fla. 1990).
[3] See, s. 26, Ch. 93-406, Laws of Florida, which stated that DOC may award gain-time for offenses committed on or after January 1, 1994, for offenses which are, were, or would have been ranked on the offense severity chart in s. 921.0012 in: Levels 1-7, up to 25 days of incentive gain-time, which shall be credited and applied monthly. Levels 8, 9, and 10, up to 20 days of incentive gain-time, which shall be credited and applied monthly.
[4] See, s. 26, Ch. 95-184 and s. 2, Ch. 95-294, Laws of Florida.
[5] Section 2, Ch. 95-294, supra.
[6] 562 So.2d at 692-693.
[7] Id. at 690.
[8] California Department of Corrections v. Morales,115 S.Ct. 1597, 131 L.Ed.2d 588 (1995); Collins v. Youngblood, 497 U.S. 37
(1990); Weaver v. Graham, 450 U.S. 24, 28 (1981). See, Art. I, s. 10, U.S. Const., making it unconstitutional for a state to "pass any . . . ex post facto Law."
[9] See generally, Paschal v. Wainwright, 738 F.2d 1173 (11th Cir. 1984); Dufresne v. Baer, 744 F.2d 1543 (11th Cir. 1984).
[10] 450 So.2d 1279, 1280 (Fla. 1st DCA 1984).
[11] 455 So.2d 639 (Fla. 1st DCA 1984).
[12] 949 F.2d 378 (11th Cir. 1991). Unlike the Eleventh Circuit's opinion in Raske v. Martinez, supra, which involved a statutory change in the maximum level of incentive gain-time DOC could award, the court's decision in Conlogue only involved, as here, changes in its stated policy rules describing how the agency intended to exercise its discretion.